UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, as Subrogee and Assignee of Real Reel Corporation d/b/a Multi-Wall Packaging,<br><br>    Plaintiff,<br><br>    v.<br><br>ADECCO USA, INC. and AJILON NORTH AMERICA, LLC,<br><br>    Defendants. | CAUSE NO. 2:12-CV-416-TLS |

**OPINION AND ORDER**

The Plaintiff, Travelers Casualty and Surety Company of America, in its capacity as the Subrogee and Assignee of Real Reel Corporation d/b/a Multi-Wall Packaging, has sued the Defendants, Adecco USA, Inc., and Ajilon North America, LLC (collectively Adecco), for breach of contract and various tort offenses. Invoking Federal Rule of Civil Procedure 12(b)(6), the Defendants have moved to dismiss the Plaintiff's Complaint on grounds that it fails to state a claim upon which relief can be granted. The Plaintiff opposes the Defendants' Motion, and the matter is ripe for this Court's consideration.

**COMPLAINT ALLEGATIONS**

Multi-Wall operates a plant in Gary, Indiana. On June 25, 2009, Multi-Wall entered into a staffing supplier agreement with Adecco. Pursuant to the Staffing Agreement, which is attached to the Complaint, Adecco agreed to "recruit, interview, select and hire assigned employees ("Associates") who, in Adecco's judgment, possess the qualifications that [Multi-Wall] request[s]." (Compl. Ex. A, ECF No. 1 at 12.) In October 2009, Adecco hired and placed

Dora Zepeda as a temporary worker in the HR/Safety Specialist position in the Multi-Wall Gary plant. On January 22, 2010, in reliance on Adecco's representations and performance under the Staffing Agreement, Multi-Wall permanently hired Zepeda for the HR/Safety Specialist position. During her time as a temporary employee and continuing until March 16, 2011, Zepeda stole money from Multi-Wall. Zepeda's theft was discovered after an anonymous tip from Multi-Wall's corporate office led to an investigation. Multi-Wall discovered that Zepeda had stolen $345,446.87 by creating payroll records for persons who were not employees and controlling the depository accounts into which the payroll for these fake employees was directly deposited. Multi-Wall was able to recover $84,505.90 in payroll taxes to mitigate its losses.

At the time Multi-Wall discovered the theft, it was insured under a crime insurance policy number 025-LB-105539415 issued by Travelers. Multi-wall made a claim on the Travelers crime policy. After applying a $10,000 deductible, Travelers paid $250,940.97 to Multi-Wall. Travelers became subrogated to all the rights of Multi-Wall against any third persons who caused or contributed to the loss. Multi-Wall assigned all of its claims and rights against all persons who caused or contributed to the loss to Travelers.

Zepeda had a criminal history that included felony convictions for theft and credit card abuse, a fact that was not known to Multi-Wall, but that Adecco knew or should have known about. The Plaintiff alleges that it was reasonably foreseeable to Adecco that Multi-Wall would be harmed by Zepeda's lack of fitness for the position. The Plaintiff asserts that Adecco should have disclosed to Multi-Wall Zepeda's criminal history, and that its failure to do so supports six causes of action: (1) breach of contract; (2) respondeat superior liability for criminal conversion; (3) negligent hiring and retention by Adecco; (4) failure to warn; (5) constructive fraud; and (6)

negligence.

## ANALYSIS

Under Rule 8's pleading requirements, a Plaintiff must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that is sufficient to provide the defendant with "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2). To assure that a pleading suffices to give effective notice to the opposing party, a complaint must contain facts that are sufficient, when accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Pleadings that fail to meet this standard are subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). A plaintiff can also plead himself out of court if he pleads facts that preclude relief. *See Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011).

The court's duty in evaluating a motion to dismiss is to evaluate the sufficiency of the complaint, not to examine evidence outside of the pleadings. Here, the Complaint includes the Staffing Agreement. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). When a party seeks to introduce additional documents, the court may convert the motion to dismiss into a motion for summary judgment and allow the responding side to produce evidence in support of its contentions, or it may elect to disregard the extraneous evidence. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.") However, the Court is not required to convert the motion to dismiss to a motion for summary judgment if the

additional documents it considers are referenced in the complaint and are central to the claim. *Citadel Grp. v. Wash. Reg'l Med. Ctr.*, 692 F.3d 580, 591 (7th Cir. 2012); *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). "Such documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)). "[T]he converse is also true: documents that are neither included in the plaintiff's complaint nor central to the claim should not be considered on a motion to dismiss." *Albany Bank & Trust Co.*, 310 F.3d at 971(citing *Berthold Types Ltd. v. Adobe Sys. Inc.*, 242 F.3d 772, 775 (7th Cir. 2001)).

Both parties submit numerous matters for this Court's consideration that are outside the pleadings. In support of its Motion to Dismiss, the Defendant provides the affidavit of Misty Clapp, the branch manager for Adecco's office in Hobart, Indiana. Clapp references the Staffing Agreement and states that Multi-Wall did not request or pay Adecco an additional fee to perform criminal background checks. The Defendant also submits a Background Authorization and Release [ECF NO. 25-1], an EEOC Policy Statement on the Issue of Conviction Records Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. [ECF NO. 25-2], the EEOC's Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment  Decisions Under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. [ECF No. 25-3], and Correspondence between Dora Zepeda and Misty Clapp [ECF Nos. 25-4 & 25-5]. The Plaintiff, in response to the Defendant's Motion to Dismiss, submits the affidavits of Teresa Manzanares, a Human Resources Generalist at Multi-Wall, and Cynthia J. Kos, a Traveler's Claim Executive. Kos's affidavit, in turn, references several

attached documents: a criminal background check obtained by Adecco; a job application addendum signed by Zepeda; Zepeda's resume; an internal note written by Adecco; and Adecco's criminal background prescreening practice. These documents were not mentioned in the Complaint and the parties do not attempt to explain why this Court should consider these outside matters, particularly where they have proceeded under the standards for a motion to dismiss. Thus, the Court will exclude these documents from its consideration when determining whether the Complaint has set forth claims upon which relief can be granted. The publications from the EEOC are not outside evidentiary documents, but an agency's interpretation of federal statute.[1]

### A.     Breach of Contract

Relying on the language of the Staffing Agreement, the Defendant argues that it had no duty to obtain criminal background information on applicants, or to provide such information to Multi-Wall. The Staffing Agreement states that "Adecco's hiring process does not include criminal background or drug screening, unless they are arranged in advance with [Multi-Wall] for an additional fee." (Compl. Ex. A.) The Defendant argues that, because the Staffing Agreement specifically and expressly provided that Adecco would not provide criminal background information, the Plaintiff cannot now claim that Multi-Wall relied upon Adecco to provide such information.

The standards for reviewing contracts are well-established. Under Indiana law, contracts are interpreted to ascertain and effectuate the intent of the parties as reasonably manifested in the

---

[1] If they are relevant at this stage of the proceedings, the Court will consider what amount of deference to afford them. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002); *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)

agreement, and if the language of the contract is clear and unambiguous, it should be given its plain and ordinary meaning. *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). Thus, courts give effect to the intentions of the parties as expressed in the four corners of the agreement, and courts determine the meaning of a contract from an examination of all of the contract's provisions, and not from a more narrow consideration of individual words, phrases, or paragraphs read alone. *Moore v. Wells Fargo Constr.*, 903 N.E.2d 525, 531 (Ind. Ct. App. 2009). Parol, or extrinsic evidence, is inadmissible to add to, vary, or explain clear and unambiguous terms of a written instrument. *Evan v. Poe & Assocs. Inc.*, 873 N.E.2d 92, 101 (Ind. Ct. App. 2007). An ambiguity does not arise simply because the parties disagree on the interpretation; rather, contract language is ambiguous only if reasonable people could come to different conclusions about its meaning. *Id.* at 98; *Simon Prop. Group, L.P. v. Mich. Sporting Goods Distribs., Inc.*, 837 N.E.2d 1058, 1070 (Ind. Ct. App. 2005).

Here, the Staffing Agreement stated that Adecco would select Associates who, in its "judgment," possessed the "qualifications" Multi-Wall requested. In the very next sentence, the Staffing Agreement specified that Adecco's hiring process did not include criminal background screens, unless they were arranged in advance with Multi-Wall for an additional fee. There is no allegation in the Complaint that Multi-Wall arranged for criminal background checks and paid the additional fee. Under a plain reading of the language of the Staffing Agreement, Adecco did not have a duty to perform background checks or to inform Multi-Wall of the results of any such investigation, unless Multi-Wall first requested the service. However, the Agreement also required Adecco to use its "judgment" to select "qualified" individuals. The parties did not list the specific qualifications in the Agreement that an individual should have, either generally or

specifically for the position of HR/Safety Specialist. Nor is it clear from the broad language of the Agreement that the judgment Adecco, as a professional staffing agency specializing in the recruiting of employees, agreed to employ during the recruiting and hiring process included informing Multi-Wall of criminal convictions of which it had actual knowledge. Reasonable people could come to different conclusions about the meaning of the contractual language, specifically the duties that Adecco undertook. Much also has to be developed as it pertains to the potential breach of those duties. Although it is not a foregone conclusion that a staffing agency using its professional judgment would conclude that an individual with Zepeda's criminal background failed to meet Multi-Wall's qualifications for an HR/Safety Specialist, neither is such a finding foreclosed by the contract.

The Plaintiff has provided sufficient factual allegations to proceed with its claim that Multi-Wall was entitled to expect that Adecco, in the exercise of its judgment as a professional staffing agency, would eliminate Zepeda from contention for a position as an HR/Safety Specialist based on the qualifications that Multi-Wall requested and based on the specific details and circumstances of her criminal background. Because the Plaintiff has stated a plausible claim for relief, the Court will deny the Defendant's request to dismiss Count Four of the Complaint, the breach of contract claim.

**B.     Respondeat Superior for Criminal Conversion**

In Count Three of its Complaint, the Plaintiff invokes Indiana's Crime Victim Relief Act and asserts that Adecco is liable for the tortious acts of criminal conversion committed by its servant, Zepeda, which she performed while under its direction and in the scope of her

employment. The Plaintiff alleges that Adecco maintained control over "Zepeda's work dealing with performance, disciplinary actions, salary, benefits and technical qualifications while she remained employed with Adecco." (Compl., ¶ 42.) Adecco argues that the Plaintiff's claim for respondeat superior for criminal conversion must be dismissed because, under the terms of the Staffing Agreement, Multi-Wall was exclusively responsible for supervising Zepeda when she was on its premises.

The Indiana Crime Victim Relief Act, Indiana Code Section 34-24-3-1, allows a person who has suffered a pecuniary loss as a result of a violation of Indiana Code Section 35-43, which includes criminal conversion, to bring a civil action to recover the loss. The Plaintiff invokes the doctrine of respondeat superior, which imposes liability on an employer for the wrongful acts of his employee committed within the scope of employment. *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989). It is based on the theory that an employer, through the ability to control its employees, will be able to avoid torts. *See Cummings v. Hoosier Marine Props., Inc.*, 363 N.E.2d 1266, 1272 (Ind. Ct. App. 1977). In Indiana, an employee may be loaned to another employer in such a way that the special employer may be responsible for the acts of the employee under the doctrine of respondeat superior. *N.Y. Cent. R. R. Co., v. N. Ind. Pub. Serv. Co.*, 221 N.E.2d 442, 446 (Ind. Ct. App. 1966); *see also Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1284 (Ind. Ct. App. 1989) (applying the borrowed servant doctrine to determine which employer was responsible for a servant's negligence). To determine whether it is the general or special employer who assumes liability for the employee, Indiana courts have looked to three tests.

> (1) the 'whose business' test which seeks to discern whether the tortfeasor was furthering the business of the special or general employer at the time of the [act]; (2)

>   the 'control' test which attempts to determine which employer had the right to control the specific act in question; and (3) the 'scope of business' test which attempts to determine if the work being done by the servant is within the scope of the business of the special employer.

*Progressive Constr. & Eng'g Co.*, 533 N.E.2d at 1284.

The Plaintiff is attempting to hold Adecco responsible for Zepeda's act of creating payroll records for persons who were not employees, and causing Multi-Wall to pay these employees through the company's direct deposit program into accounts that were actually controlled by Zepeda. Zepeda could not have performed any of these acts without the authority and access given to her by Multi-Wall. Her payroll responsibilities and duties were specific tasks assigned by Multi-Wall, and her performance of these tasks was within the scope of Mutli-Wall's business and furthered its business. Moreover, the Staffing Agreement expressly assigned Multi-Wall as the party with "responsib[ility] for the supervision and safety of Adecco Associates while they are on [Multi-Wall's] premises." (Compl. Ex. A.) Zepeda was on Multi-Wall's premises when she performed the duties that precipitated the conversion. There is nothing in the record to suggest that Adecco had the right to control Zepeda's work as it related to her payroll functions for Multi-Wall, or that it even possessed the information necessary to exercise direction and control with respect to these functions. *See Farr v. Laidig Concrete, Inc.*, 810 N.E.2d 1104, 1107 (Ind. Ct. App. 2004) (recognizing that the right to control an employee's work is the most important factor in determining which employer is vicariously liable). Adecco's recognition of its inability to control an Associate's work in such areas is evident by the inclusion in the Staffing Agreement of Multi-Wall's agreement "not to allow Associates to be exposed to cash, checks, keys, credit cards, merchandise, negotiable instruments, or confidential information . . . while they are on assignment with [Multi-Wall]. (Compl. Ex. A.) Multi-Wall

further agreed "to bear the risks of such exposure." The Plaintiff cannot hold Adecco responsible for failing to prevent Zepeda's scam, wholly orchestrated on Multi-Wall's premises, when Multi-Wall unequivocally assumed supervisory responsibility for her actions while on its premises in the contract between the parties. The only aspects of Zepeda's work that Adecco controlled—the responsibility to pay Zepeda, manage her benefits, and discipline her—are not the aspects that allowed her to commit criminal conversion. The Complaint does not provide any plausible factual basis to discount the contractual language, or the realities of whose business Zepeda was furthering, or which employer controlled the actions precipitating her theft. Accordingly, the Court finds that Adecco is not vicariously liable for Zepeda's action and will dismiss Count Three of the Complaint.

C.     **Constructive Fraud**

In support of its constructive fraud claim, the Plaintiff alleges that Adecco had a duty to provide truthful and accurate information relating to the qualifications and fitness of its Associates, and that Adecco violated this duty by making deceptive material omission or withholding information relevant to her qualifications and fitness. The Plaintiff alleges that Adecco gained an advantage at the expense of Multi-Wall's reliance upon Adecco to provide it with material information bearing upon Zepeda's fitness because after placing Zepeda in the HR/Safety Specialist position, Adecco negotiated a new staffing agreement with Multi-Wall through Zepeda.

Constructive fraud "arises by operation of law from a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the existence or

evidence of actual intent to defraud." *Stoll v. Grimm*, 681 N.E.2d 749, 757 (Ind. Ct. App. 1997).

> The elements of constructive fraud are:
> 1. A duty existing by virtue of the relationship between the parties;
> 2. A violation of that duty by the making of deceptive material misrepresentations of past or existing facts or remaining silent when the duty to speak exists;
> 3. Reliance thereon by the complaining party;
> 4. Injury to the complaining party as a proximate result of the reliance; and
> 5. The gaining of an advantage by the party to be charged at the expense of the complaining party.

*Allison v. Union Hosp., Inc.*, 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) (citing *Marathon Oil Co. v. Collins*, 744 N.E.2d 474, 480 (Ind. Ct. App. 2001)). Importantly, "parties may not rely on a contractual relationship to create a duty that, if breached, would form the basis of a constructive fraud claim." *Id.* (citing *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000)). In other words, "[c]ontractual agreements do not give rise to a fiduciary relationship creating [the] duty" necessary to support a claim for constructive fraud. *Morgan Asset Holding Corp.*, 736 N.E.2d at 1273; *see also Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 126 (Ind. Ct. App. 1992) (explaining that "pure contractual relations between parties entering into an arm's length transaction may not form the basis for constructive fraud"). The type of "special relationship" for which the law will infer fraud is present "when the parties have fiduciary duties to each other, such as in the relationship between lawyer and client." *Comfax Corp.*, 587 N.E.2d at 125.

The only possible basis for the duty that the Plaintiff alleges Adecco owed to Multi-Wall stems from the Staffing Agreement. The Plaintiff has not alleged any other facts supporting a relationship that would give rise to a duty by operation of law—rather than by mere agreement of the parties. Accordingly, the Plaintiff's Complaint fails to set forth a cognizable claim for constructive fraud.

**D.      Remaining Tort Claims**

The Plaintiff alleges, in Count One of the Complaint, that Adecco committed the tort of negligent hiring and retention when it failed to exercise reasonable care in the selection of Zepeda as a temporary employee for Multi-Wall. The Plaintiff alleges that it was reasonably foreseeable that Multi-Wall would be harmed by Zepeda's lack of competence and fitness for the HR/Safety Specialist position. In Count Two of the Complaint, the Plaintiff asserts that Adecco had an obligation under tort law to warn Multi-Wall of Zepeda's criminal convictions, and that it could not contract away this duty without first disclosing to Multi-Wall in the contract that it would not reveal criminal convictions of which it had knowledge. The Plaintiff alleges that Adecco's failure to warn caused Multi-Wall and Travelers to sustain a loss of $260,940.97. In Count Six of the Complaint, the Plaintiff alleges that the Defendant is liable for negligence because it failed to meet the standard of care of an ordinarily prudent placement company when it hired Zepeda to provide services to Multi-Wall and, in doing so, implicitly represented that she was qualified and fit for the position of HR/Safety Specialist.

Adecco argues that the Court should dismiss the Plaintiff's claims for negligent hiring and retention, failure to warn, and negligence because they are merely repackaged breach of contract claims for which Plaintiff is seeking purely economic losses. Adecco asserts that for any of these causes of action to survive, the Plaintiff must establish that Adecco owed a duty to Multi-Wall. *See, e.g., Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 842 (Ind. 2012) ("To establish a negligence claim, a plaintiff must establish three elements, one of which is that the defendant owed a duty of care to the plaintiff."); *Cook v. Ford Motor Co.*, 913 N.E.2d 311, 319–20 (Ind. Ct. App. 2009) (holding that a cause of action for failure to warn sounds in negligence and

listing the three elements, including "a duty owed by the defendant to the plaintiff"); *Sandage v. Bd. of Comm'rs*, 897 N.E.2d 507, 512 (Ind. Ct. App. 2008) (holding that to find an employer liable for negligent hiring and retention the plaintiff must establish that the employer owed the plaintiff a duty of care). The Plaintiff does not dispute this requirement, but argues that Adecco indeed owed a duty to Multi-Wall, both in contract and in tort, to perform its duties under the contract in a skillful, careful, diligent, and workmanlike manner, and a duty to exercise reasonable care to protect Multi-Wall once it was aware of Zepeda's prior commission of theft and credit card abuse.

This Court's job is to predict how the Supreme Court of Indiana would characterize the Plaintiff's claim that Adecco failed to provide Multi-Wall with an employee who was fit for service. *See, e.g., Lewis v. Methodist Hosp., Inc.*, 326 F.3d 851, 853 (7th Cir. 2003) (analyzing Indiana law to determine whether to characterize claims as arising under tort or contract for purposes of deciding which statute of limitations to apply). Indiana follows the economic loss rule. Generally speaking, the economic loss rule holds that disputes involving only economic losses between parties in privity of contract should be resolved by contract law instead of tort law. *See Indianapolis-Marion Cnty. Pub. Library v Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 729 (Ind. 2010) ("[T]he economic loss rule reflects the resolution of liability for purely economic loss caused by negligence is more appropriately determined by commercial rather than tort law"). If a plaintiff is unable to find a duty in tort independent of the contract, then the tort claim should be dismissed and the plaintiff left to pursue contractual remedies, if any are available. *See Paniaguas v. Endor, Inc.*, 847 N.E.2d 967, 972 (Ind. Ct. App. 2006) (dismissing a tort claim for purely economic injury because the defendant's duty to the plaintiff arose solely in

the agreement between the parties). The economic loss rule reduces complexity in the law and, more importantly, protects contract law and the bargains reached therein from being undermined by tort law. The Seventh Circuit, in an opinion penned by Judge Richard Posner reasoned that in situations "[w]here there are well-developed contractual remedies […then] there is no need to provide tort remedies […because] [t]he tort remedies would duplicate contract remedies, adding unnecessary complexity to the law." *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 865 (7th Cir. 1999). "Worse, the provision of these duplicative tort remedies would undermine contract law" because the incentives to negotiate and strike bargains in contract would be reduced if aggrieved parties could simply use tort law to renege bargains reached in contract that they no longer supported. *Id.* Additionally, Judge Posner explained that the rule "forbids commercial contracting parties (as distinct from consumers and other individuals engaged in business) to escalate their contract dispute into a charge of tortious misrepresentation if they could easily have protected themselves from the misrepresentation of which they now complain." *Id.* at 866.

In *Greg Allen Construction Co. v. Estelle*, 798 N.E.2d 171 (Ind. 2003), the Indiana Supreme Court considered whether the plaintiffs, who had entered into a contract with a construction company for home renovations, had been injured in a manner that the law would protect if there were no contract, 798 N.E.2d at 173, because "[t]o the extent that a plaintiff's interests have been invaded beyond mere failure to fulfill contractual obligations, a tort remedy should be available" *id.* The court cited, as an example of conduct that would be recoverable absent a contract, the situation where the agent negligently burned the house down while working with a blowtorch. Under this scenario, it would not matter whether the work was being

performed on the house under contract or the project was a neighbor's house. The court concluded that "[t]he rule of law is that a party to a contract or its agent may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, but not otherwise." *Id.* at 175.

Where the injury to a plaintiff is from a defective product or service, "the defendant is liable under a tort theory if the defect causes personal injury or damage to property other than the product or service itself." *Corry v. Jahn*, 972 N.E.2d 907, 916 (Ind. Ct. App. 2012) (citing *Indianapolis-Marion Cnty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 726 (Ind. 2010)). Pecuniary loss that is unaccompanied by any property damage or personal injury, may not be recoverable in tort. *Corry*, 972 N.E.2d at 916 (noting that this rule has become known as the "economic loss rule."). "'These losses are viewed as disappointed contractual or commercial expectations.'" *Id.* (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 154 (Ind. 2005) (brackets omitted). "In general, a claim that a product or service did not perform as expected is best left to contract law remedies." *Gunkel*, 822 N.E.2d at 155. In that realm, the buyer and seller to a transaction are able to allocate the risk that an item being sold will not live up to expectations, and price the product accordingly. *Id.* The Indiana Court of Appeals, in applying the economic loss rule, has stated its agreement with the Supreme Court of Wisconsin's observations regarding the principles underlying application of the economic loss rule to tort actions: "(1) to maintain the fundamental distinction between tort law and contract law; (2) protect commercial parties' freedom to allocate economic risk by contract; and (3) to encourage the party best situated to assess the risk [of] economic loss, the commercial purchaser, to assume, allocate, or insure against that risk." *KB Home Ind. Inc. v. Rockville TBD Corp.*, 928 N.E.2d 297,

304 (Ind. Ct. App. 2010) (quoting *1325 N. Van Buren, LLC v. T–3 Group, Ltd.*, 716 N.W.2d 822, 831 (Wis. 2006)). "[T]o recover in negligence there must be a showing of harm above and beyond disappointed expectations." *KB Home*, 928 N.E.2d at 305.

Here, the buyer and the seller of the services at issue expressed their respective duties and responsibilities through the terms of the Staffing Agreement. Absent that Agreement, Adecco owed no duty to the Multi-Wall. By entering into a contract, the parties were free to allocate the risk that the temporary staffing services provided by Adecco would not live up to expectations (because Adecco did not use proper judgment, hire a qualified individual, or otherwise), and price the product accordingly. As part of this risk assessment and pricing, Multi-Wall specifically agreed that Adecco Associates would not perform certain activities or be exposed to "cash, checks, keys, credit cards, merchandise, negotiable instrument, or confidential information," and also agreed to "bear the risks of such exposure or activity." Multi-Wall, as the party best situated to assess the risk of economic loss, was able to assume, allocate, or insure against that risk when it decided to forego criminal background checks for an additional fee, refrained from conducting its own background check upon hiring Zepeda for a position with access to confidential information, and insured against loss through the purchase of a crime insurance policy.

The gravamen of both the breach of contract and the tort claims is that Adecco sent Multi-Wall an employee who was not fit for employment. In making the allegations in support of the tort claims, the Plaintiff specifically incorporated the breach of contract allegations.[2] Further,

---

[2] The Plaintiff asserts that it can plead the breach of contract and tort claims in the alternative. However, the Plaintiff did not do so here. Rather, it explicitly incorporated the breach of contract allegations into various tort claims.

16

the only claim of loss in this litigation relates to the failure of Adecco's services to live up to expectations. The Plaintiff does not point to an injury that is distinct from the injury it alleges it suffered as a result of the breach of contract. In other words, the Plaintiff's interests have not been "invaded beyond mere failure to fulfill contractual obligations." *Greg Allen Constr.*, 798 N.E.2d at 173. This injury is for a purely economic loss.

The Plaintiff disagrees that Multi-Wall's damages were purely economic losses, relying primarily on *Frye v. American Painting Co.*, 642 N.E.2d 995 (Ind. Ct. App. 1994). In *Frye*, the defendant, a painting company, hired a new painter. *Id.* at 997. Shortly thereafter, the painter committed a burglary, theft, and arson. *Id.* The defendant knew of these crimes but chose to retain the painter. *Id.* Subsequently, the painting company entered into contract with the plaintiff to paint his home; the company sent the painter to do the job. *Id.* The painter stole the plaintiff's cash and credit cards, burned the house down, and, later used the stolen credit cards. *Id.* Even though the parties were in privity of contract, the *Frye* court allowed the plaintiff to bring suit in tort. *Id.* at 998.

There is one glaring difference between this case and the *Frye* case. In addition to stealing cash and credit cards, the painter burned the plaintiff's house down. The plaintiff, clearly, suffered property damage and a tort remedy was deemed appropriate. It is unclear if the court would have arrived at the same results if the arson had not occurred. The Defendant does not cite a case for the proposition that loss of money through theft is considered property damage for the purposes of the economic loss rule. This case does not fit neatly into a specific category of harm usually discussed in economic loss cases, such as damage to a product or other property, or personal injury. However, the Court concludes that for Multi-Wall to recover *from Adecco*, it

17

must establish that Adecco's act of supplying it with an Associate who ultimately stole funds constituted a failure by Adecco to provide its service as expected. And this is best characterized as a disappointed contractual expectation. *See Gunkel*, 822 N.E.2d at 152–54 (describing "economic losses" as "commercial loss").

Because the parties' relationship and their duties were governed by the Staffing Agreement, and because the damages the Plaintiff seeks concern failed performance under this Agreement, the Court finds that the Plaintiff's tort claims may not proceed. The Plaintiff's remedies, if any, must be pursued under contract law.

The Court makes one additional note on the Plaintiff's failure to warn claim. The Plaintiff asserts that "Adecco apparently assumed a duty to Mulit-Wall to obtain a prospective candidate's criminal history, regardless of whether Multi-Wall paid a fee for the criminal background check." (Pl.'s Br. 12, ECF No. 22-1.) The Plaintiff argues that Adecco took on this additional responsibility, which created a duty to warn that existed outside the contract, when it held itself out to Multi-Wall as conducting the backgrounds checks as a matter of routine. The Complaint, however, contains no factual allegations to support the Plaintiff's claim that Adecco informed Multi-Wall that it performed background checks regardless of the contractual language or the payment of an additional fee. To the extent the Defendant is liable to the Plaintiff for failing to warn it about Zepeda's criminal background, its liability stems from the contractual language and the agreement to use professional judgment to select qualified individuals.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the

Defendants' 12(b)(6) Motion to Dismiss Plaintiff's Complaint [ECF No. 12]. This litigation remains pending on the Plaintiff's breach of contract claim.

SO ORDERED on September 5, 2013.

s/ Theresa L. Springmann<br>
THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT<br>
FORT WAYNE DIVISION